IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of City of Lancaster : 
and City of Lancaster School District : 
from the Lancaster County Board : 
of Assessment Appeals : 
: No. 665 C.D. 2017
Tax Parcel No. 336-84744-4-0001 : ARGUED: December 4, 2017
:
Property of Red Rose Transit :
Authority :
:
Appeal of: City of Lancaster and :
School District of Lancaster :

BEFORE: HONORABLE MARY HANNAH LEAVITT, President Judge
HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE J. WESLEY OLER, JR., Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
SENIOR JUDGE OLER, JR.                FILED: January 3, 2018

The City of Lancaster (City) and the City of Lancaster School District (School District) (together, Appellants) appeal from the April 27, 2017 order of the Court of Common Pleas of Lancaster County (trial court) denying Appellants' tax appeal from the Lancaster County Board of Assessment Appeals (Board), which denied Appellants' challenge to the tax-exempt status of a parcel of land owned by the Red Rose Transit Authority (RRTA). We affirm.

The RRTA is a Municipal Authority formed under the Municipality Authorities Act of 1945 (Act).[1] (Trial court's Findings of Fact (F.F.) No. 1.) The parcel of land (Parcel) at issue is owned by the RRTA and is located in the 200 block of North Queen Street in downtown Lancaster.[2] (F.F. No. 2.) The Parcel contains passenger waiting areas, a parking garage with 398 parking spaces, several bus bays and a roadway to allow for bus looping and egress onto Chestnut Street. (F.F. Nos. 34, 39; *see* F.F. No. 29.) The Parcel is physically integrated into the RRTA's Queen Street Transit Center. (F.F. No. 30.)

The Parcel was granted tax exempt status by the Lancaster County Tax Assessment Office in 2009 and has continuously retained that exempt status since it was granted. (*See* F.F. Nos. 6, 10 & 21.) In 2013, Appellants jointly filed a tax appeal challenging the tax exempt status of the Parcel.[3] (F.F. No. 11.) The Board denied Appellants' challenge and upheld the Parcel's exempt status. Appellants appealed to the trial court, which conducted a non-jury trial. By order dated April 27, 2017, the trial court denied Appellants' appeal and also issued extensive findings of fact and conclusions of law. Appellants then appealed to this Court, and the trial

---

[1] Act of May 2, 1945, P.L. 382, *as amended*, 53 P.S. §§ 301-322. The Act was recodified and replaced by the Act of June 19, 2001, P.L. 287, *as amended*, 53 Pa. C.S. §§ 5601-5623.

[2] The Parcel is identified as Tax Parcel No. 336-84744-4-0001. (F.F. No. 3.)

[3] The appeal initially related to four separate parcels. (F.F. No. 11.) Appellants withdrew their appeals relating to the other three parcels. (F.F. No. 20.)

court subsequently issued a thorough and well-written opinion pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure.

Before this Court, Appellants raise two issues: (i) whether the Parcel is immune from real property taxes; and (ii) whether the trial court erred in considering the funding of the RRTA parking garage to be relevant to the determination of whether the Parcel is immune from real property taxes.[4]

As stated, the RRTA is a municipal authority under the Act. For purposes of tax immunity, municipal authorities created under the Act are agencies of the Commonwealth and are presumed to be immune from taxes. *See Lehigh-Northampton Airport Authority v. Lehigh County Board of Assessment Appeals*, 889 A.2d 1168, 1176 (Pa. 2005). Further, Section 5620 of the Act grants to municipal authorities an exemption from taxation upon property acquired or used by them for authorized purposes. 53 Pa. C.S. § 5620. This Court has stated:

> the distinction between tax immunity and tax exemption is unnecessary in the context of government-owned property. Whether either term is used, government-owned property is not taxable if it is being used for a public purpose, and the taxing authority bears the burden to prove its taxability. Stated otherwise, the taxing authority must

---

[4] Whether property is tax-exempt or immune from taxation is a question of law. *Norwegian Township v. Schuylkill County Board of Assessment Appeals*, 74 A.3d 1124 (Pa. Cmwlth. 2013). This Court's standard of review for a question of law is *de novo* and our scope of review is plenary. *Id*.

The trial court found the Parcel was immune from taxation, although the order denies a challenge to its tax exempt status. As will be explained, the distinction between immunity and exemption is not material for present purposes.

> prove that the government-owned property is not being used for a governmental purpose in order for the property to be taxable.

*Norwegian Township v. Schuylkill County Board of Assessment Appeals*, 74 A.3d 1124, 1131 (Pa. Cmwlth. 2013) (citations omitted). Notably, "immunity is assumed unless the agency acts outside of its authorized governmental purposes." *Lehigh*, 889 A.2d at 1179.

> In determining whether a municipal authority has forfeited its tax immunity status, a court must employ what has become known as the "public-use" test. It provides that, "a court must first look at the broader question of whether the agency's action is within its 'authorized purposes and powers.' *Southeastern Pa. Transp. Auth. v. Bd. of Revision of Taxes*, 574 Pa. 707, 833 A.2d 710, 716 (2003) (*SEPTA*). In addition, the court must also consider the scope of the immunity, *i.e.*, whether the property was acquired or used for a purpose that is within the operation of the agency. In making this determination, the court must keep in mind that immunity is not limited to the absolute minimum of property necessary for operations.

*Reading Housing Authority v. Board of Assessment Appeals of Berks County*, 103 A.3d 869, 872–73 (Pa. Cmwlth. 2014).

With respect to the first part of the public use test, *i.e.*, whether the agency's action is within its authorized purposes and powers, the enumerated powers of municipal authorities created under the Act include:

> acquiring, holding, constructing, financing, improving, maintaining and operating, owning or leasing … projects

4

of the following kind[:] … **Transportation**, marketing, shopping, terminals, bridges, tunnels, flood control projects, highways, parkways, traffic distribution centers, **parking spaces**, airports **and all facilities necessary or incident thereto**.

53 Pa. C.S. § 5607(a)(3) (emphasis added). Further, a municipal authority "may exercise all powers necessary or convenient for the carrying out of the purposes set forth in [Section 5607 of the Act]." 53 Pa. C.S. § 5607(d). Additionally, the RRTA's Articles of Incorporation authorize the RRTA, *inter alia*, to acquire, purchase, construct, maintain and operate property necessary or desirable for carrying out the purposes of the RRTA as an operating Authority. (F.F. No. 26.)

The Parcel contains a structure integrated into a public transit facility and includes a 398-space parking garage, several bus bays and an egress roadway to allow buses to exit. This structure certainly falls within the ambit of transportation, parking spaces and facilities necessary or incident thereto, all of which a municipal authority is expressly authorized to operate under the Act. Thus, all of the facilities on the Parcel are encompassed by the RRTA's authorized purposes and powers. *See SEPTA*.

With respect to the other part of the 'public use' test, *i.e.*, whether the property was acquired or used for a purpose that is within the operation of the agency, the facilities on the Parcel also meet this test. The parking garage is open to the public and operated for the benefit of the public. (F.F. No. 31.) All 398 parking

5

spaces in the garage can be leased either hourly, daily, monthly or annually. (F.F. No. 32.) The parking garage further allows public parking for direct access to the RRTA bus system and Amtrak Station. (F.F. No. 41.) The RRTA operates a shuttle service that starts at the Queen Street Station and takes riders to the Amtrak Station. (F.F. No. 42.) Viewing this evidence in the light most favorable to the prevailing party below, and giving that party the benefit of all favorable inferences therefrom, as we must do on appeal,[5] the record supports the conclusion that the Parcel is being used for a purpose that is within the operation of the agency. *See SEPTA*.

Nonetheless, Appellants argue that the relationship between the parking spaces and the operation of the transit system is either non-existent or superficial. Appellants point out that the RRTA did not present any data to demonstrate that the patrons of the parking garage utilize the train station or the Authority's bus system. Appellants, however, overlook the fact that immunity is assumed, *Lehigh*, and that Appellants bear the burden to prove that the Parcel is not being used for a governmental purpose in order for the property to be taxable, *Norwegian Township*. Moreover, as the trial court stated,

> [t]he fact that no one presently may be availing himself or herself of this public transit service does not diminish the fact that the parking garage is providing a public transit service…. The public transit purpose does not change

---

[5] *See Showalter v. Pantaleo*, 9 A.3d 233, 235 (Pa. Super. 2010).

simply because no one avails themselves of the services being offered.

(Trial court opinion at 19.) Additionally, the trial court found that it is common for public transportation centers to have parking garages connected to them. (F.F. No. 66.) The trial court made no factual findings that would lead to the conclusion that the operation of the parking facility on the Parcel is outside of the RRTA's governmental purpose.

We also disagree with Appellants that this case is controlled by *SEPTA*. As the trial court stated, *SEPTA* is factually distinguishable. In *SEPTA*, portions of SEPTA's building were leased to for-profit entities. The Pennsylvania Supreme Court held that those portions of the building leased to for-profit entities were not immune from taxation. *SEPTA*, 833 A.2d at 720. In contrast, the Parcel here is owned and operated by the RRTA within its authority as a Municipal Authority, as opposed to being property leased to for-profit entities.[6]

The above factual findings are sufficient to support the trial court's conclusion that the facilities on the Parcel are being used in a manner that falls within the "public use" test and thus serves a governmental purpose under the Act.

---

[6] We acknowledge that the RRTA owns a parcel that is leased to the Federal Taphouse restaurant. However, the Lancaster County Assessment Office (Office) has assigned a different tax parcel number to the portion of the RRTA's property that contains the Federal Taphouse. (F.F. No. 54.) The Office sends the tax bill to the RRTA, which then gives it to the Federal Taphouse to pay. (F.F. No. 54.) That parcel is not part of this appeal. (*See* F.F. Nos. 11, 20.)

Therefore, the trial court did not err when it concluded that the Parcel was immune from taxation.[7]

Accordingly, we affirm the trial court's order.

_____
J. WESLEY OLER, JR., Senior Judge

---

[7] Because the trial court's findings regarding funding for the construction of the facilities on the Parcel are not necessary to support the trial court's conclusion that the Parcel is immune from taxation, we need not address Appellants' other argument--that the trial court erred in considering the funding.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re:  Appeal of City of Lancaster  :
and City of Lancaster School District  :
from the Lancaster County Board  :
of Assessment Appeals  :
  :  No. 665 C.D. 2017
Tax Parcel No. 336-84744-4-0001  :
  :
Property of Red Rose Transit  :
Authority  :
  :
Appeal of: City of Lancaster and  :
School District of Lancaster  :

O R D E R

AND NOW, this 3rd day of January, 2018, the order of the Lancaster

County Court of Common Pleas dated April 27, 2017 is affirmed.

_____
J. WESLEY OLER, JR., Senior Judge